**MACON–BIBB COUNTY HOSPITAL AUTHORITY d/b/a Medical Center of Central Georgia, Plaintiff,**

v.

**The CONTINENTAL INSURANCE CO., Third-Party Plaintiff,**

v.

**William Andrew BROWN, as executor of the Estate of Billy J. Brown, deceased, and Anne A. Brown, Defendants.**

Civ. A. No. 87–6–3–MAC (WDO).

United States District Court, M.D. Georgia, Macon Division.

Nov. 23, 1987.

Brian J. Passante, Macon, Ga., C. Cullen Sylvester, Atlanta, Ga., for plaintiff.

Joseph H. Chambless, Macon, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

The matter before this court in the above-styled civil action concerns the propriety of a non-defendant individual's assertion, in his individual capacity, of the Fifth Amendment guarantee against compelled self-incrimination where that individual is producing corporate documents as corporate representative and where that individual is one of three principals in the corporation. Mack Langston, the individual asserting the privilege, contends that a representative of a corporation who is fearful of self-incrimination in his individual capacity may properly refuse to answer questions going to the identity and authenticity of the corporate documents. Plaintiffs contend that Silver Systems, Inc.[1] has both an obligation and a duty, pursuant to the deposition subpoena, to designate a representative on behalf of the corporation who can both produce the requested records and answer questions concerning them. The subpoena in question did not designate any particular individual of Silver Systems as the corporate representative. Plaintiffs contend, therefore, that Silver Systems should be required to designate a representative who can supply information without the interference of the Fifth Amendment privilege.

Mack Langston is one of three principals in Silver Systems, Inc., a corporation that allegedly has paid kickbacks to an employee of the Medical Center of Central Georgia, plaintiff in the above-styled action, in exchange for receiving the hospi-

1. The corporation has been alternately referred to as Silver Systems, Inc., and Silver Systems, Ltd. This court adopts the appellation used by Silver Systems' attorney.

tal's business. The scheme as alleged involves the submission of inflated bills to the hospital for goods or services furnished by Silver Systems and the subsequent remission of the excess payments to one of the hospital's employees. The hospital has brought an action against its fidelity insurers to recover the excess payments made to Silver Systems and other companies who were victims of or participants in the hospital employee's criminal venture. In connection with the civil action, the hospital has subpoenaed Silver Systems' corporate records pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Also in accordance with that Rule, Silver Systems designated Mack Langston to produce the records. Mr. Langston produced certain documents,[2] but he has refused to answer questions regarding either the identity or authenticity of the records. Further, Mr. Langston asserted the Fifth Amendment in response to questions concerning the location of certain records, the identity of either the custodian of the records or the bookkeeper of the corporation, the particulars of Silver Systems' corporate bank accounts, and the nature and extent of Silver Systems' relationship with both the Medical Center of Georgia and its now deceased employee, Mr. William J. Brown.

The Fifth Amendment privilege against compulsory self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory...." *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). The privilege "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Id.* 406 U.S. at 445, 92 S.Ct. at 1656. "The protection does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution...." *Maness v. Meyers*, 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975); *see Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). In light of evidence provided by Mr. Langston and his attorney, this court finds that Mr. Langston has sufficient grounds for invoking the Fifth Amendment privilege.

Despite the importance and pervasiveness of the Fifth Amendment privilege, the assertion of that privilege by Mack Langston in the matter before this court is complicated by Langston's position as custodian of the corporate records of Silver Systems, Inc. Clearly, neither a corporation nor its human representative can assert a Fifth Amendment privilege as to the contents of corporate records. *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). Corporate records held in a representational capacity are not privileged "regardless of how small the corporation may be." *Id.* 417 U.S. at 100, 94 S.Ct. at 2189.

However, the Supreme Court has made just as clear that a custodian of corporate records does not waive the personal privilege by accepting the position. *Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957).

> A custodian, by assuming the duties of his office, undertakes the obligation to produce the books of which he is custodian in response to a rightful exercise of the State's visitorial powers. But he cannot lawfully be compelled, in the absence of a grant of adequate immunity from prosecution, to condemn himself by his own oral testimony.

*Id.* 354 U.S. at 123–24, 77 S.Ct. at 1149.

As required by *Bellis*, Silver Systems, Inc., has produced its corporate records.[3]

---

**2.** Plaintiffs question the completeness of the records produced by Mr. Langston.

**3.** Silver Systems, Inc.'s compliance with the subpoena in the person of Mack Langston in his representative capacity negates any need for this court to consider in detail recent cases examining whether the "act of production" is sufficiently testimonial to justify the invocation of the Fifth Amendment privilege. Those cases hold that the mere act of production of documents whose contents are not privileged could be sufficiently testimonial and incriminating to trigger the Fifth Amendment privilege. *See Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552

As permitted by *Curcio*, Mack Langston has asserted his Fifth Amendment privilege against compelled self-incrimination. The question thus becomes what is the extent of the privilege. In *Curcio*, the Supreme Court stated the following:

> The custodian's act of producing books or records in response to a subpoena duces tecem is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself. The custodian is subjected to little, if any, further danger of incrimination.

*Curcio*, 354 U.S. at 125, 77 S.Ct. at 1150. This language intimates that a corporate representative must identify or authenticate, in his representative capacity, the records or documents produced. The Court refused, however, to require the representative "to disclose, by his oral testimony, the whereabouts of books and records which he has failed to produce." *Id.* Nor did the Court require the custodian to "name the persons in whose possession the missing books may be found. Answers to such questions are more than 'auxiliary to the production' of unprivileged corporate or association records." *Id.*

The court takes note of three recent cases that have examined situations similar to the one presented before this court. *In Re Grand Jury 83–8 (MIA) Subpoena Duces Tecem (Martin and Hernandez)*, 611 F.Supp. 16 (S.D.Fla.1985); *In Re Grand Jury Subpoena (Shuler)*, 635 F.Supp. 569 (N.D.Ga.1986); *United States v. McDonald*, 653 F.Supp. 793 (N.D.Ga. 1987). In *Martin and Hernandez*, the government sought the production of and testimony about corporate documents from two individuals in their representative capacity. Both the corporation and the individuals were targets of a grand jury investigation. The court determined that the government could require the individuals as custodians to produce and authenticate the documents. While the act of production and the authentication could be used in subsequent proceedings against the corporation, the court held that such testimony could not be used by the government in subsequent criminal proceedings against the individuals. *Martin and Hernandez*, 611 F.Supp. at 24.

In *Shuler*, the court found that the government behaved properly by requesting Mr. Shuler to appoint an agent to produce and authenticate the corporate documents. In dicta, the court said that if Mr. Shuler did deliver the requested materials, he "would not be attesting to his personal possession of them but to their existence and possession by the corporation...." *Shuler*, 635 F.Supp. at 572. The court indicated that in any attempt by the government to implicate Mr. Shuler in his individual capacity, the evidence would be subject to a motion to suppress. *Id.*

In *McDonald*, the situation foreseen in *Shuler* came to pass. In *McDonald*, however, the court determined that since the subpoena was directed not to the defendant individually but to the custodian of the records, Mr. McDonald had voluntarily appeared as the custodian of the records. *McDonald*, 653 F.Supp. at 796. Therefore, Mr. McDonald's testimony was not compelled within the meaning of the Fifth Amendment. The court denied Mr. McDonald's motion to suppress. *Id.* at 796–97.

Though the situation before this court is in the civil context and, therefore, different from the numerous cases considered above

(1984). The Eleventh Circuit has held that an individual may not claim the Fifth Amendment privilege as justification for withholding documents of a collective entity held by that individual in a representational capacity. *In Re Grand Jury Subpoena Duces Tecem (Ackerman)*, 795 F.2d 904 (11th Cir.1986). In a situation involving a one-man corporation, the court held that "in the rare situation where producing the documents would violate the individual's fifth amendment rights," the custodian can assert the privilege. *In Re Grand Jury No. 86–3 (Will Roberts Corp.)*, 816 F.2d 569, 570 (11th Cir.1987). The court went on to require the production of the documents via some other agent. *Id.* This remedy adopted by the Eleventh Circuit appears to be a sensible solution to the problem of production when no representative of a corporation can be designated who does not wish to invoke the Fifth Amendment privilege.

regarding compliance with grand jury subpoenas, this court determines that the proper disposition of the matter before this court can be gleaned from those cited cases. This case, like the others, involves the production of corporate documents by a corporate representative who wishes to assert his Fifth Amendment privilege in his individual capacity. The law is not altered because Mack Langston is invoking the privilege pursuant to a subpoena in a civil action as opposed to a subpoena duces tecem. "A witness may properly invoke the [F]ifth Amendment privilege when he reasonably apprehends a risk of incrimination, ... though no criminal charges are pending against him ... and even if the risk of prosecution is remote." *In Re Corrugated Container Anti-Trust Litigation,* 620 F.2d 1086, 1091 (5th Cir.1980), quoting from *Wehling v. Columbia Broadcasting System,* 608 F.2d 1084, 1087, n. 5 (5th Cir. 1979).

First, in producing the corporate records as Silver Systems' designated representative, Mack Langston attested both to the existence of the records and to their possession by the corporation. *See Shuler, supra.* In identifying or authenticating those records produced, Mr. Langston would make explicit what is implicit in the production itself; that is, that these corporate records are produced *by the corporation* pursuant to the subpoena. This identification process involves little, if any, further danger of incrimination beyond that which has already attached as a result of the act of production. *See Curcio, supra.*

 Thus, this court determines that Mr. Langston, as the designated representative of the corporation, and in the name of the corporation, may be compelled to identify and authenticate the corporate records produced at the deposition pursuant to the subpoena. In that such testimony is clearly not voluntary, as evidenced by Mr. Langston's assertion of the Fifth Amendment privilege from the outset, such testimony is subject to a motion to suppress in the event criminal proceedings are later brought against Mr. Langston in his individual capacity. However, those questions which require an inquiry into Mr. Langston's thought processes are subject to the privilege. Documents producible and questions answerable only by reference to Mr. Langston's own subjective, unrecorded thought processes are subject to the privilege. *See Will Roberts Corp.,* 816 F.2d at 573. *See* note 3, *supra.* Further, any questions regarding either the whereabouts of books and records not produced or the names of persons in whose possession the books and records may be found need not be answered by Mr. Langston. *See Curcio, supra.*

In summary, then, while plaintiff is correct in stating that the corporation may not invoke the Fifth Amendment privilege against compelled self-incrimination, Mr. Langston as the corporate representative retains that right to assert the privilege in his individual capacity. Thus, certain questions which do no more than make explicit what is implicit in the production itself must be answered. Other information, however, is subject to Mr. Langston's privilege.